UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ADAM SEARS, individually and on behalf of others similarly situated, | ) ) **CLASS ACTION COMPLAINT** ) |
| Plaintiff | ) **FLSA COLLECTIVE ACTION** ) **COMPLAINT UNDER** |
| vs. | ) **29 USC § 216(b)** ) |
| UNIVERSAL PROTECTION SERVICE, LLC d/b/a ALLIED UNIVERSAL SECURITY SERVICES, Defendant | ) ) ) **CASE NO.   1:23-CV-00743** ) ) |

**PLAINTIFF'S COMBINED CLASS ACTION AND FLSA COLLECTIVE ACTION COMPLAINT FOR DAMAGES**

*I.  INTRODUCTION*

1. Plaintiff Adam Sears ("Sears" or "Plaintiff") brings this combined Rule 23 class action and Fair Labor Standards Act collective action lawsuit against Defendant Universal Protection Service, LLC d/b/a Allied Universal Security Services ("Allied Universal" or "Defendnat") to address class-wide wage and hour and overtime violations committed by Defendants against him and his fellow employees who work or worked for Allied Universal in Indiana.  Sears will serve as the representative plaintiff in the Rule 23 class action and Fair Labor Standards Act collective action.   Sears' consent to join this collective action lawsuit is attached hereto as Exhibit 1.

2. Allied Universal provides security services and smart technology to its clients in a variety of industries throughout the United States, including in Indiana.

3. Sears and all other similarly situated employees work or worked as hourly-paid employees in Indiana.

1

3. Pursuant to its company-wide policies and procedures, Allied Universal fails to pay Sears, and other similarly situated employees, for all hours worked and the overtime premium for all hours worked over forty (40) in a single workweek.

4. Allied Universal fails to compensate its hourly-paid employees for all time in two ways: (i) by following a procedure and policy of paying employees based on scheduled start and end times rather than for all time worked; and (ii) by requiring and/or permitting its employees to perform pre-shift work and post-shift work off-the-clock and without pay.

5. Allied Universal's failure to properly compensate its hourly-paid employees for all time worked violates the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. and the Indiana Wage Payment Statute ("IWPS), I.C. § 22-2-5-1, *et seq*.

6. Allied Universal's systematic violation of federal and state wage laws was willful and in bad faith.

7. Sears, individually and on behalf of all others similarly situated, brings this lawsuit as: (a) a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., to recover unpaid overtime wages owed to Sears and all other similarly situated workers employed by Allied Universal in Indiana; and (b) a Rule 23 class action under Indiana state law, including the Indiana Wage Payment Statute ("IWPS), I.C. § 22-2-5-1, *et seq*.

8. Sears class action and FLSA collective action claims based upon Allied Universal's class-wide failure to pay employees for obvious and recorded work hours will be perfect for class and collective action treatment and will be easy to prove. Allied Universal's wage and hour violations will be shown based upon a comparison of their time clock records and the face of pay stubs Allied Universal issues to their employees.

## II. PARTIES

9. Sears is an individual who resides in Hamilton County, Indiana. He was employed by Allied Universal within the meaning of the FLSA during the three-year period prior to the filing of this Complaint. At all times hereinafter mentioned, Sears was an individual employee within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

10. Sears was employed by Allied Universal as an hourly paid non-exempt employee from approximately July 22, 2022 to April 26, 2023 when Sears voluntarily resigned his employment. Allied Universal placed Sears to work for Allied Universal's client, Castleton Square Mall, a shopping mall in Indianapolis, Marion County, Indiana. Plaintiff resides and is domiciled within this judicial district.

11. Allied Universal is a Delaware limited liability company qualified to transact business in Indiana.

12. Allied Universal is a leading security and facility services company that provides security services and smart technology to its clients ina range of specialty sectors such as education, healthcare, retail, commercial real estate, and government and corporate campuses.

13. Allied Universal provides such services to customers in throughout Indiana.

14. Allied Universal employed Sears and other similarly situated persons. At all relevant times, Allied Universal was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d). Allied Universal is/was Sears' and other similarly situated persons' "employer" as that term is described under I.C. 22-2-5-1, *et seq.*

15. At all relevant times, Allied Universal was an employer of Sears, and all other similarly situated employees.

16. Sears and all similarly situated employees are non-exempt, hourly employees who worked or worked for Allied Universal in Indiana within the respective limitations periods.

### III. JURISDICTION

17. This Court has jurisdiction over Allied Universal because Sears brings claims arising under federal law.  This Court has supplemental jurisdiction over Sears' Indiana state law claims pursuant to 28 U.S.C. § 1367.

### IV. VENUE

18. Venue is appropriate in the Southern District of Indiana pursuant to 28 U.S.C. § 1391.

### V. FLSA COVERAGE

19. At all times hereinafter mentioned, Allied Universal has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

20. At all times hereinafter mentioned, Allied Universal has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

21. At all times hereinafter mentioned, Sears was an employee engaged in commerce or in the production of goods for commerce.

### VI.  FACTUAL ALLEGATIONS

*Allied Universal's Policy and Practice of Paying Based on Scheduled Work Time*

22. Sears re-alleges the allegations set forth above.

23. Allied Universal utilize a computerized system which tracks the exact time (by the minute) an hourly employee clocks in and clocks out of work. Allied Universal also required Sears and similarly situated persons to use handwritten timesheets to record their scheduled start and end times of work.

24. Even though Allied Universal maintains a system which records, to the minute, the time an employee clocks in and clocks out, Allied Universal ignores those records for pay purposes. For the purpose of calculating the amount to pay an hourly employee, Allied Universal routinely calculates the time work started and ended based on the employee's scheduled shift start and end times (the "Timekeeping Policy").  Thus, under the Timekeeping Policy, Allied Universal bases pay on the scheduled shift times of the employees rather than on all time actually worked.

25. Sears and similarly situated hourly-paid employees performed compensable work activities while "on-the-clock" and during the time that Allied Universal did not pay for pursuant to its Timekeeping Policy, including work activities such as completing the handoff where the guard on duty being replaced would need to update the replacement regarding what had transpired during the shift and things and events the replacement could expect to deal with during his upcoming shift.

26. As a direct consequence of the Timekeeping Policy, Allied Universal has been systematically underpaying its employees significant sums of wages, including regular and overtime wages.

27. The Timekeeping Policy results in Allied Universal failing to pay hourly

employees accurately and fairly over time, to Allied Universal's financial gain and the hourly employees' financial detriment.

28. If Allied Universal paid its hourly employees on a continuous workday basis - from time punch in to time punch out – its hourly employees would be paid more wages.

29. Allied Universal utilizes an attendance and/or disciplinary policy to further ensure the Timekeeping Policy is substantially rigged in Allied Universal's favor.  For example, Allied Universal's policies do not permit hourly employees to freely arrive late for their shift or leave their shift early.  As a result, Sears and similarly situated employees are not able to benefit from Allied Universal's Timekeeping Policy; instead, the Timekeeping Policy results over a period of time, in the failure to pay Sears and similarly situated employees for all hours worked.

30. Under Allied Universal's tardiness and punctuality policies, hourly employees who are tardy may be subject to discipline up to and including termination.

31. Pursuant to Allied Universal's policies, Sears and all similarly situated employees are subject to discipline if they clock in after the start of their shift.

32. Sears and all similarly situated employees do not typically leave work early; instead they routinely leave work and clock out following the end of their scheduled shift. Because of this, Sears and all similarly situated employees are unable to take advantage of the Timekeeping Policy because they cannot decide to leave prior to the conclusion of their shift.

33. Accordingly, at the end of an employee's shift, Allied Universal's Timekeeping Policy is rigged in favor of Allied Universal because it decreases the amount of compensable time for which Allied Universal pays its employees.

34. In sum, Allied Universal's Timekeeping Policy is used in such a manner that it results in the failure to compensate its employees properly for all time they have actually

worked, including overtime wages.

35. Allied Universal has no good faith basis to use such a rigged system as their time clocks record the actual clock in and clock out times to at least one-minute accuracy. Allied Universal has complete knowledge of all hours worked by Sears and all similarly situated employees.

36. Allied Universal's failure to pay this unpaid time has resulted in Sears and all similarly situated employees being regularly denied proper compensation under the FLSA and Indiana state law.

37. Sears and all similarly situated employees, in conformance with Allied Universal's clock-in and clock-out policies, and attendance and/or disciplinary policies, regularly clocked in and commenced work several minutes before the start of their shifts.

38. During those workweeks and others, Allied Universal's Timekeeping Policy caused Sears and all similarly situated employees' to incur overtime for which they were not compensated (for all hours over 40 in a single workweek). For example, Sears worked forty (40) or more hours in certain workweeks and thus, any unpaid time consists of unpaid overtime.

***Allied Universal's Practice of Requiring and/or Permitting Hourly-Paid Employees to Work Before and After Their Scheduled Shift and Clock Out Time***

39. Allied Universal required and/or permitted Sears and similarly situated, hourly paid employees to perform work before the beginning of their scheduled shift and clock-in time, and after the end of their scheduled shift and clock-out time. Specifically, Allied Universal required Sears and similarly situated employees to provide a report of activity that had transpired during their shift that was ending, and of activity the replacement coming on duty should anticipate during his shift.

40. Allied Universal's policy and practice was to not pay for the pre- and post-shift

7

work. Both the incoming employee and outgoing employee were not paid for this work time.

41. Allied Universal knew that its hourly-paid employees were performing these-pre- and post-shift activities without compensation.

42. Sears and others similarly situated regularly worked forty or more hours per week for Allied Universal. Thus, any unpaid time worked during those workweeks amounts to unpaid overtime premiums required by the FLSA.

### VII.  CLASS AND COLLECTIVE ACTION ALLEGATIONS

43. Sears re-alleges the allegations set forth above.

### COUNT I: FLSA Overtime Collective

44. Sears brings Count I, the FLSA claim arising out of Allied Universal's Timekeeping Policy (as described above), as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and the following collective action class:

All persons employed by Allied Universal in Indiana in an hourly position during the relevant period.

At present, the relevant time period includes the three-year period prior to the filing of this Class and Collective Action Complaint and extends forward. The collective action class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

### COUNT II: IWPS Unpaid Wage Class

45. Sears brings Count IV, the Indiana Wage Payment Statute ("IWPS") claim arising out of Allied Universal's unlawful Timekeeping Policy (as described above), as a class action under Fed. R. Civ. P. 23, on behalf of himself and the following class:

All persons employed by Allied Universal in an hourly position during the relevant time

period.

At present, the relevant time period includes the two-year period prior to the filing of this Class and Collective Action Complaint and extends forward. The class defined herein remains subject to change or modification based on, among other things, certification-related discovery, agreement of the parties, and/or Order of the Court.

46.     This action is filed as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 USC § 216(b), on behalf of Sears and all current and former employees who were damaged by Allied Universal's compensation policies as described above. By virtue of the "collective action," Sears represents the identical and/or similar interests of former and current coworkers denied wages and overtime compensation under the same circumstances. Sears anticipates that other employees and former employees of Allied Universal will opt in to the action.

47.     With respect to FRCP 23(b)(3) class action claims under the Indiana Wage Payment Statute, Sears will serve as class representative over the proposed classes described above.

48.     Based upon information and belief, the number of potential class members is believed to be more than several hundred individuals, however, the actual number of Allied Universal's current and former employees who will be members of this collective action/class action is so great (numerosity) that joinder of all members is impractical. Instead, Sears will pursue discovery to obtain the names of the other current and former employees of Allied Universal, to provide notice of the collective action, and to offer the opt in opportunity, and to provide notice of the class action and to offer the opt out opportunity.

49.     Particularly with the types of wage claims and practices at issue in this case, there

are questions of law and fact that are common to the entire collective group/class.

50. Sears claims are typical of the claims of the whole collective group of current and former hourly-paid employees harmed by Allied Universal's illegal wage practices. Sears' claims are typical of the claims of the whole class of current and former hourly-paid employees harmed by Allied Universal's illegal wage practices.

51. Sears will act to fairly and adequately protect the interests of the entire collective group of current and former employees of Allied Universal. Sears will act to fairly and adequately protect the interests of the Rule 23 classes of current and former employees who work or worked for Allied Universal in Indiana.

52. A "combined" collective action/class action is superior to other available means for the fair and efficient prosecution of these wage claims against Allied Universal. For example, to prove Allied Universal's illegal wage practices, Sears and other members of these collective groups/classes would seek in discovery records about all similarly situated current and former hourly paid employees who were similarly denied earned wages and overtime compensation under Allied Universal's compensation system which resulted in uncompensated work and underpayment of overtime wages. Individual lawsuits by the members of the collective groups/classes could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for limited funds. Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

53. A determination regarding the "similarness" of those able to participate in the collective action/class action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages. Particularly

with the type of FLSA and Indiana statutory wage violations at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under the FLSA and Indiana law, or may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

54. A combined collective action/class action will result in an orderly and expeditious administration of the class members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.   Because Defendants' compensation system which required and resulted in uncompensated work and underpaid overtime wages to hourly-paid employees results in wage violations that trigger issues of both federal and state law, this cause of action presents the ideal factual scenario supporting the Court's exercise over the supplemental state law claims, as common state and federal law issues predominate.

## VIII.  STATEMENT OF CLAIMS

### A.  Fair Labor Standards Act Claim (Counts I)

55. Sears incorporates herein by reference paragraphs 1 through 54 above.

56. Allied Universal violated Sears' rights and the rights of all members of the Plaintiff Classes to be properly paid overtime wages in a manner required by the FLSA.  Allied Universal has committed overtime violations by failing to pay Sears and his similarly situated coworkers for all regular and overtime hours of work.

57. Allied Universal has repeatedly violated the FLSA's overtime provisions by not paying Sears and members of the Plaintiff Classes for all hours and at the required overtime compensation rate for all hours worked over 40 in a work week.

58. Allied Universal's failure to comply with the FLSA's provisions regarding

overtime compensation is willful and without justification, and subjects Allied Universal to a three-year statute of limitations.

59.     Sears and the Plaintiff Classes seek all available damages, including unpaid wages, unpaid overtime compensation, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which they may be entitled for Allied Universal's violations of their rights under the Fair Labor Standards Act.

### B.  *Indiana Wage Payment Statute Claim (Count II)*

60.     Sears incorporates herein by reference paragraphs 1 through 59 above.

61.     Sears has statutory wage claims arising under the Indiana Wage Payment Statute, I.C. 22-2-5.  Sears is the named Plaintiff who represents the same or similar interests of all current and former hourly-paid employees of Allied Universal in Indiana.

62.     By way of his Claims, Sears is seeking, individually and on behalf of members of the Plaintiff Classes, all available damages, including all unpaid wages, all underpaid wages, all available liquidated (treble damages), all attorney's fees, costs and expenses, plus any other damage to which Sears and his fellow Plaintiff Class members may be entitled pursuant to law. Sears further expressly asserts and alleges that Allied Universal acted in bad faith, and certainly were not acting or seeking to comply with the Indiana Wage Payment Statute in "good faith."

### IX.  PRAYER FOR RELIEF

WHEREFORE, Sears respectfully requests that the Court enter judgment against Allied Universal and issue all available relief to him and to all eligible members of the Plaintiff Classes, including, but not limited to, the following:

1.      All damages available under the FLSA, including all unpaid overtime wages, all

        liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;

2. All damages available under the Indiana Wage Payment Statute, including all unpaid wages, unpaid overtime wages, all liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;

3. All unpaid and underpaid wages;

4. All reasonable attorney's fees and expenses;

5. Costs;

6. Prejudgment interest, if available; and

7. Any and all other relief just and proper in the premises.

        Respectfully Submitted,

        s/Robert J. Hunt
        Robert J. Hunt, (#30686-49)
        Robert F. Hunt (#7889-84)

        The Law Office of Robert J. Hunt, LLC
        1905 South New Market Street, Ste 168
        Carmel, Indiana 46032

        Telephone:  (317) 743-0614
        Facsimile:   (317) 743-0615
        E-Mail:      rob@indianawagelaw.com
                        rfh@indianawagelaw.com

        Attorneys for Plaintiff